United States District Court
Southern District of Texas
**FILED**

MAR 1 0 2016

**Clerk of Court**

United States District Court
Southern District of Texas
**ENTERED**
March 11, 2016
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| ROEL MARTINEZ | § | |
| Petitioner | § | |
| | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. M-15-112 |
| | § | |
| | § | |
| WILLIAM STEPHENS | § | |
| DIRECTOR, TEXAS DEPARTMENT | § | |
| OF CRIMINAL JUSTICE, CORRECTIONAL | § | |
| INSTITUTIONS DIVISION | § | |
| Respondent | § | |

## REPORT & RECOMMENDATION

Petitioner, a state prisoner proceeding pro se, filed an application for relief pursuant to 28 U.S.C. § 2254. (Dkt. Entry No. 1.) This case was referred to the undersigned pursuant to 28 U.S.C. § 636(b). Pending before the Court is Respondent's Motion for Summary Judgment. (Dkt. Entry No. 8.) Petitioner filed a response to the dispositive motion. (Dkt. Entry No. 11) This case is ripe for disposition on the record.

After careful review of the record and the applicable law, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment (Dkt. Entry No. 8) be **GRANTED** to the extent it is consistent with this Report, Petitioner's claims under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED** with prejudice because they lack merit or are procedurally defaulted, and the case be closed.

### I. BACKGROUND

Petitioner is currently in the custody of the Texas Department of Criminal Justice ("TDCJ")

1

pursuant to a judgment and sentence from the 139th Judicial District Court of Hidalgo County, Texas, in criminal cause number CR-1266-12-C.   (Dkt. Entry No. 7-1 at 4.)[1]   On July 10, 2012, a jury convicted Petitioner of assault of a family/household member, with previous convictions, in CR-1266-12-C.   (Dkt. Entry No. 7-2 at 2.)   (The record reflects that Petitioner pleaded guilty to a second count of assault (same victim) in CR-1439-12-C.)   On July 23, 2012, he was sentenced to nine years in prison in each case, to run concurrently.   (*Id.*; Dkt. Entry No. 7-1 at 4.)   Petitioner did not file a direct appeal.   Petitioner filed a state habeas application, which the Texas Court of Criminal Appeals ("TCCA") denied on February 19, 2014, without written order on the findings of the trial court without a hearing. (Dkt. Entry No. 7-13 at 2.)   This action followed.   Respondent takes the position that the federal application is timely filed. (*See* Dkt. Entry No. 8 at 3.)

## II. SUMMARY OF THE PLEADINGS

Consistent with Respondent's construction of the claims, which Petitioner does not contest in his reply brief, the undersigned finds that Petitioner asserts the following claims in his application:

(1) Petitioner challenges the TCCA's denial of his Sixth Amendment claim that trial counsel rendered ineffective assistance by failing to file notice of appeal on his behalf and failing to properly consult with Petitioner about filing an appeal.   (Dkt. Entry No. 1 at 7.)   (Petitioner repeats this same ground in his third claim, but the undersigned will fold it into Claim 1.)

(2) Trial counsel failed to properly admonish Petitioner about his appeal according to the Texas Rules of Appellate Procedure; and,

---

[1]   Page numbers refer to the electronically-assigned (PDF) page numbers via CM-ECF when the entire, relevant file is opened.

(3) Petitioner was denied the effective assistance of counsel when counsel failed to:

> (a) move to withdraw based on a conflict of interest because counsel is related to the state court trial judge;
>
> (b) prepare for trial and develop a defense;
>
> (c) assume the trial court would be lenient at sentencing.

(Dkt. Entry No. 1 at 6–7;   11–13.)

Respondent argues that the TCCA's denial of Claim 1 was not unreasonable or contrary within the meaning of the Antiterrorism Effective Death Penalty Act ("AEDPA"), that Claim 2 is non-cognizable, and that Claim 3 is unexhausted and procedurally barred from review.   (Dkt. Entry No. 8 at 4–17.)

Petitioner filed a reply to the motion for summary judgment.   Petitioner seems to acknowledge that some of his claims are defaulted, but he points out that he tried to raise them after he filed a petition for writ of mandamus with the TCCA when the state failed to timely answer his state habeas application.   (Dkt. Entry No. 11 at 1–2.)   However, he later found out that the state court ruled on his habeas application and never addressed his attempt to amend or expand upon his state application in a response.   (*Id.*)   Petitioner expresses that, of all his claims, he really only wants his right to file a direct appeal "back," and he concedes that he has not tried to show that he can overcome the procedural default because he only wants to file a direct appeal and raise his claims through that "proper" channel.   (*Id.* at 2.)

### III. RELEVANT LAW

**AEDPA's Standards of Review**

Under AEDPA, a "[c]ourt may not issue a writ of habeas corpus for a defendant convicted under a state judgment unless the adjudication of the claim by the state court '(1) resulted in a

3

decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'"  *Riddle v. Cockrell*, 288 F.3d 713, 716 (5th Cir. 2002) (citing 28 U.S.C. § 2254(d)(1)–(2)).  As stated by the Supreme Court of the United States, "[section] 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000)). Under section 2254(d)(1), "contrary to" means that the state court applied a rule different from the governing law set forth in Supreme Court cases, or if the state court decided a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Id.*  "Unreasonable application" means that the state court correctly identified the correct governing legal principle from Supreme Court decisions, but the state court unreasonably applied the legal principle to the facts of the particular case.  *Id.*  An "unreasonable application" does not arise simply because the federal habeas court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Williams*, 529 U.S. at 411. Rather, the inquiry into unreasonableness is whether the state court's application of clearly established federal law is *objectively* unreasonable.  *Bell*, 535 U.S. at 694.  "The focus of this objective reasonableness inquiry is on the state court's ultimate decision, not whether the state court 'discussed every angle of the evidence.'"  *Dale v. Quarterman*, 553 F.3d 876, 879  (5th Cir. 2008) (citing *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc)).  A state court's findings of fact are presumed to be correct unless the petitioner rebuts the presumption by clear and convincing evidence.  *Henderson v. Cockrell*, 333 F.3d 592, 598 (5th Cir. 2003)

(citing 28 U.S.C. § 2254(e)(1)). "The clear-and-convincing evidence standard of § 2254(e)(1)—which is 'arguably more deferential' to the state court than is the unreasonable-determination standard of § 2254(d)(2)—pertains only to a state court's determinations of particular factual issues, while § 2254(d)(2) pertains to the state court's decision as a whole." *Blue v. Thaler*, 665 F.3d 647, 654 (5th Cir. 2011).

"Section 2254(d) applies even where there has been a summary denial." *Cullen v. Pinholster* 131 S. Ct. 1388, 1402 (2011) (citing *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)). "Under Texas law, usually a denial of [state habeas] relief rather than a 'dismissal' of the claim by the Court of Criminal Appeals disposes of the merits of a claim." *Henderson*, 333 F.3d at 598 (citing *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999)). "AEDPA's standards apply . . . when the state's highest court rejects a claim without giving any indication of how or why it reached that decision." *Id.* (citing *Weeks v. Angelone*, 176 F.3d 249, 258 (4th Cir. 1999)). If the Texas Court of Criminal Appeals denies state habeas relief without a written opinion, the federal habeas court: "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law." *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003) (citing, among other cases, *Catalan v. Cockrell*, 315 F.3d 491, 493 n.3 (5th Cir. 2002)).

### Exhaustion & Procedural Default

Section 2254(b)(1)(A) explains that an "application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears" that the "applicant has exhausted the remedies available in the courts of the State." Stated

another way, "[a]pplicants seeking habeas relief under § 2254 are required to exhaust all claims in state court prior to requesting federal collateral relief." *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999). Exhaustion requires the applicant to pursue his "claims through one complete cycle of either state direct appeal or post-conviction collateral proceedings." *Busby v. Dretke*, 359 F.3d 708, 723 (5th Cir. 2004). Exhaustion requires the applicant to fairly present the substance of the federal habeas claim to the highest state court and do so in a procedurally correct manner. *Mercadel*, 179 F.3d at 275; *Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993). "A federal court claim must be the 'substantial equivalent' of the one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citation omitted); *see also Nickleson v. Stephens*, 803 F.3d 748, 753 (5th Cir. 2015) (explaining that "the exhaustion doctrine demands more than allusions in state court to facts or legal issues that might be comprehended within a later federal habeas petition"). "The exhaustion requirement is not satisfied . . . where the petitioner presents new legal theories or factual claims in his federal habeas petition." *Neville v. Dretke*, 423 F.3d 474, 478 (5th Cir. 2005).

"If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention—whether in trial, appellate, or habeas proceedings, as state law may require—procedural default will bar federal review." *Magwood v. Patterson*, 130 S. Ct. 2788, 2801 (2010) (citations omitted). "[I]f the court to which a petitioner must present his claims to satisfy the exhaustion requirement would now find the claims procedurally barred, the court need not dismiss his claims to allow exhaustion." *Rocha v. Thaler*, 619 F.3d 387, 398 (5th Cir. 2010). "[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the

claims procedurally barred," then "there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).   Under Texas law, state prisoners are generally precluded from raising new claims in a subsequent state habeas petition under Article 11.07.   *See* Tex. Code Crim. Proc. Ann. art. 11.07 § (4)(a) (barring successive habeas applications unless narrow exceptions are met).   As a general rule, Texas's prohibition against successive habeas applications results in the procedural default of unexhausted claims that were not raised in the first state habeas application.   *See, e.g., Coleman*, 501 U.S. at 735 n.1; *Rocha*, 626 F.3d at 824 n.36 (citing circuit cases to this effect).

Even if a claim is procedurally defaulted, a federal court may consider the merits of the claim if the prisoner can overcome the procedural default by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Also, there is a narrow exception under *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012), which held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."

### Ineffective Assistance of Counsel

The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).   When a prisoner proceeds under § 2254 on constitutional grounds of ineffective assistance of counsel, the prisoner must satisfy the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).   The prisoner must show that counsel's performance was deficient and that prejudice resulted from that deficiency.   *Id.* at 687.

To demonstrate deficient performance under the first prong, the prisoner must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687–88. A court's scrutiny of counsel's performance is "highly deferential," and every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Under the second *Strickland* prong, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* at 687.

A modification of *Strickland*'s two-prong test applies in the context of an alleged forfeited appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470 (2000). The Supreme Court has held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* at 477 (citations omitted). "[A] defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id.* When the defendant does not instruct defense counsel to file an appeal and never asks that an appeal not be taken, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think that either (1) a rational defendant would want an appeal (for example, because there are non-frivolous grounds for appeal), or (2) this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. In

8

*Flores-Ortega*, the Supreme Court employed the term "'consult' to convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478.

In the context of a forfeited-appeal claim, the Supreme Court has stated that "[i]f a defendant expressly and unequivocally tells his attorney to file a direct appeal and counsel fails to do so, prejudice is presumed." *Id.* at 483. Unless prejudice is presumed, the defendant is required to demonstrate prejudice. *Id.* at 484. Prejudice in this context requires the defendant to show that there is a reasonable probability he would have timely appealed but for counsel's deficient performance (*i.e.*, counsel's failure to consult). *Id.*

Under AEDPA, the "more general the rule, the more leeway [state] courts have in reaching outcomes in case-by-case determinations." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009) (citation omitted). The "*Strickland* standard is a general standard," so, under AEDPA, "a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* The Supreme Court describes a federal court's review under § 2254(d)(1) of a state court's denial of a *Strickland* claim as "doubly deferential judicial review." *Id.* "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which is quite "different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*, 562 U.S. at 101.

## IV.   FINDINGS & CONCLUSIONS

**Claim 1**

In his first claim, Petitioner argues that trial counsel rendered ineffective assistance by failing to inform Petitioner of his appellate rights and failing to file timely notice of direct

appeal, which caused Petitioner to forfeit his direct appeal. Respondent argues generally that Petitioner has failed to demonstrate that the state court's denial of this claim was unreasonable. The undersigned agrees with Respondent.

The record reflects that the state courts had a solid record for the purposes of ruling on Petitioner's claim. First, the state trial court obtained a responsive affidavit from former trial counsel. (Dkt. Entry No. 7-13 at 57.) Former counsel averred that he explained the right to appeal and right to a new trial in both of Petitioner's criminal cases at "great length," which included the appropriate deadlines. (*Id.*) Former counsel averred that the trial judge explained these rights to Petitioner both before and after sentencing. (*Id.*) The state trial court found former counsel's affidavit to be credible. (*Id.* at 80.)

In addition, the record included the sentencing transcript from the criminal proceeding, which reflects that the trial court informed Petitioner about his right to appeal, that counsel told the court he had admonished Petitioner about his right to appeal, and that Petitioner was willing to waive his right to appeal. The relevant exchanges are as follows:

THE COURT: He doesn't give up his right to appeal. We are talking about CR-1266-12-C, correct?

MR. ESQUIVEL: Correct, Judge.

THE COURT: Mr. Martinez, in CR-1266-12-C, sir, you are not giving up your right to appeal. You understand that, right?

THE DEFENDANT: Yes, sir.

THE COURT: You have a right to appeal. You have a right to ask—file a Motion for New Trial. I'm telling you that right now. That form tells the Court of Appeals that you do—I'm telling you that you have a right to appeal, alright?

THE DEFENDANT: Yes, sir.

THE COURT: So sign that form.

MR. FLORES: Judge, we are willing to waive that right if—

THE COURT: Don't waive that right. He shouldn't waive that right.

MR. FLORES: I have admonished him about his right to appeal, Judge, for purposes of discussion.

THE COURT: He doesn't have a right to appeal. I mean, he does have a right to appeal. That was—I misspoke on that. You understand that, right, Mr. Martinez?

THE DEFENDANT: Yes, sir.

THE COURT: We had a jury trial and you have a right to appeal.

* * *

[(following sentencing)]

THE COURT: ... Mr. Martinez, I have told you in that case that you do have a right to appeal. And you do have a right to appeal.   It will be filed, that right to appeal. You also have a right to ask—file a Motion for New Trial within the time limits specified by law.

(Dkt. Entry No. 7-13 at 71–77.)

The record also included the "Trial Court's Certification and Notification of Defendant's Right to Appeal," which was signed by Petitioner and is a standardized form that, in part, explains the defendant's appellate rights.   (Dkt. Entry No. 7-2 at 4.)

The record included factual data, which the trial court memorialized in its findings and conclusions in the state habeas proceeding.   The facts reflect that counsel moved to withdraw on July 23, 2012, and the trial court granted the oral motion.   (*Id.* at 79.)   The facts and record reflect that Petitioner filed a pro se notice of appeal on October 12, 2012, that Petitioner filed his

11

state habeas petition on March 31, 2013, and that the Thirteenth Court of Appeals dismissed Petitioner's pro se notice of appeal for want of jurisdiction on April 18, 2013 (while the mandate was issued on July 23, 2013).   (*Id.* at 74–75;   *see generally* Dkt. Entry No. 7-5 at 1–3.)

Finally, the undersigned observes that the record included Petitioner's arguably equivocal and inconsistent allegations.   For example, Petitioner advanced two different theories.   On the one hand, Petitioner seemed to be alleging that he directed his attorney to file notice of appeal, but counsel failed to do so;   on the other hand, Petitioner also alleged that counsel failed to consult with him about an appeal or explain the procedure for doing so.   (*See, e.g.*, Dkt. Entry No. 7-13 at 12–18.)

In the habeas proceeding, the trial court concluded that Petitioner failed to demonstrate that trial counsel's representation fell below an objective standard of reasonableness, among other conclusions.   (*Id.* at 77.)   The TCCA summarily denied the application for relief, without written elaboration.   (*Id.* at 2.)   *See Harrington*, 562 U.S. at 98 (explaining that state courts need not explain their habeas decisions to be entitled to AEDPA deference).

Based on the foregoing record, Petitioner has failed to show that the state court's denial of this claim was unreasonable or contrary within the meaning of AEDPA.   Although Petitioner disagrees with the outcome, as well as the state court's disposition of the record evidence, the state court was not obligated to credit Petitioner's allegations and evidence and was free to credit the evidence that was contrary Petitioner's account.   *See, e.g., Kately v. Cain*, 704 F.3d 356, 361 (5th Cir. 2013) (explaining that the district court erred under AEDPA by re-weighing the conflicting evidence and failing to defer to the state court's disposition of the evidence and noting that the state habeas court was entitled to credit conflicting, even contradicted, evidence).

Neither Petitioner's personal opinion about what he thinks the evidence shows, nor simple disagreement with the overall outcome provides a viable, persuasive basis for disturbing under AEDPA the state court's denial of this claim, nor the trial court's conclusion that Petitioner failed to show counsel performed deficiently. *See, e.g., Harrington*, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which is quite "different from asking whether defense counsel's performance fell below *Strickland*'s standard."); *Blue v. Thaler*, 665 F.3d 647, 654 (5th Cir. 2011) (explaining that, under section 2254(d)(2), "[i]t is not enough to show that a state court's decision was incorrect or erroneous"). Accordingly, Petitioner's first claim should be denied and dismissed.

### Claim 2

Petitioner's second claim parallels his first claim because both are premised on the alleged loss of Petitioner's opportunity to pursue a direct appeal, due to trial counsel's ineffectiveness. In his second claim, Petitioner argues more specifically that trial counsel failed to advise him about his appellate rights according to the dictates of Tex. R. App. R. 25.2, which sets forth particular procedures for perfecting an appeal in a criminal case (but not the time limits for filing notice). Respondent argues that, to the extent Petitioner complains about a violation of state appellate rules, this claim is not cognizable because federal courts do not sit to review errors under state law in federal habeas actions. (Dkt. Entry No. 8 at–7.)

Neither the findings by the state trial court nor the summary disposition by the TCCA lend insight into how the state courts construed this *pro se* claim, such as whether it was construed as an ineffective assistance of counsel claim or as a different sort of claim. Nevertheless, the undersigned concludes that a denial of this claim under *Strickland* was not

unreasonable or contrary under AEDPA.  *See Schaetzle*, 343 F.3d at 443 (explaining that, if the state court denies the claim without a written opinion, the federal habeas court: "(1) assumes that the state court applied the proper 'clearly established Federal law'"; and (2) then determines whether its decision was contrary or unreasonable under AEDPA.   As already explained, there was ample evidence showing that Petitioner was adequately informed about his appellate rights—both by counsel and the trial court— and that he did not forfeit the right to a direct appeal due to counsel's ineffectiveness under *Strickland* and *Flores-Ortega*.    Even assuming, for the sake of argument only, that Tex. R. App. P. 25.2 somehow explains the logic into the reasonableness of counsel's performance under *Strickland* and its progeny, it does not change the recommended outcome here.    Again, the state court was not required to credit Petitioner's evidence or his assertions (sworn or otherwise) that he told counsel to appeal or that counsel failed to adequately consult with him about an appeal in general or under Tex. R. App. P. 25.2 .

Second, Petitioner has not shown that an alleged failure to conform to the language, spirit, or dictates of Tex. R. App. P. 25.2 violates any other rights protected by federal law—that is, any rights independent of his right to the effective assistance of counsel, such as due process. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67– 68 (1991) (explaining that "federal habeas corpus relief does not lie for errors of state law" and stating that it "is not the province of a federal habeas court to reexamine state-court determinations on state-law questions");   *Passman v. Blackburn*, 652 F.2d 559, 569 (5th Cir. 1981) (explaining that a "state court's failure to follow its own procedural rules does not of itself raise federal constitutional questions cognizable in habeas corpus").   To that end, Petitioner is not entitled to habeas relief under any standard of review in this federal habeas action to the extent he is asserting a claim independent of the right to the

effective assistance of counsel.   Nevertheless, the undersigned emphasizes that it would not be unreasonable or contrary for the state court to deny this claim as a general matter on the basis that Petitioner fails to show a violation of any "other" rights protected under federal law, such as a due process.   Petitioner's second claim boils down to a complaint about counsel's performance.   As such, it is predicated on his right to the effective assistance of counsel under the U.S. Constitution, which is evaluated under *Strickland* and AEDPA's deferential standards and, as explained above, does not merit federal habeas relief.   This second claim should be denied and dismissed.

**Claim 3**

In his third claim, Petitioner claims that trial counsel was ineffective for three different reasons.   Petitioner alleges he was denied the effective assistance of counsel when counsel failed to:

(a) move to withdraw based on a conflict of interest because counsel is related to the state court trial judge;

(b) prepare for trial and develop a defense; and,

(c) assume the trial court would be lenient at sentencing.

(*See* Dkt. Entry No. 1 at 7.)   Respondent argues that these grounds are unexhausted and procedurally barred from federal review.

A review of Petitioner's criminal case and his state habeas application reflects that he did not raise these grounds on direct or collateral appeal, which means they are unexhausted. However, it is not necessary to dismiss them for lack of exhaustion.   By all indications, Texas law would preclude Petitioner from raising them in a second or subsequent state habeas action under Article 11.07, *see* Tex. Code Crim. Proc. Ann. art. 11.07 § (4)(a) (barring successive habeas

applications unless narrow exceptions are met), which means they are procedurally defaulted on federal habeas review, *see Coleman*, 501 U.S. at 735 n.1 ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," then "there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims.");   *Rocha*, 619 F.3d at 398 & n.36 (same or similar).

As a result, this claim and these grounds are barred from federal review, unless Petitioner can overcome the default.   The undersigned concludes that Petitioner fails to demonstrate cause for the default and actual prejudice to overcome the default, and he fails to demonstrate that a failure to consider the claims will result in a fundamental miscarriage of justice (*i.e.*, actual innocence).   In his response to the summary judgment motion, Petitioner concedes that he does assert any basis to excuse the default.   Petitioner points out, however, that he had to seek a petition for writ of mandamus in order to compel the state to file an answer to his state habeas petition, and he also tried to seek more time to clarify his state habeas claims after the state filed its answer, although the state court did not act on his request because his state habeas application was denied summarily in the meantime.   The undersigned finds that these excuses (the necessity of the mandamus petition and his apparently untimely effort to "amend" his claims in a responsive brief) do not amount to cause or actual prejudice.   *E.g.*, *Coleman*, 501 U.S. at 753 (explaining that cause requires a showing that "there must be something external to the petitioner, something that cannot be fairly attributed to" the petitioner);   *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (explaining that "cause" for a procedural default typically requires a

demonstration that some objective factor external to the defense impeded the petitioner's efforts to comply with the state's procedural rule).

There is one other means for trying to overcome the default. Petitioner proceeded pro se in his state habeas proceeding. Under recent Supreme Court precedent, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez v. Ryan*, 132 S. Ct. at 1320. This rule applies to the system in Texas. *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013). To overcome the procedural default of an ineffective assistance of counsel claim within the exception carved out in *Martinez v. Ryan*, the prisoner "must . . . demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 1318–19. The Fifth Circuit has indicated that this showing is comparable to the standard for obtaining a Certificate of Appealability. *Crutsinger v. Stephens*, 576 F. App'x 422, 430 (5th Cir. 2014) (unpublished) (citing *Martinez*, 132 S. Ct. at 1318–19, which cited *Miller–El v. Cockrell*, 537 U.S. 322 (2003)).

The undersigned finds that Petitioner fails to overcome the default under the *Martinez* rule because none of the three grounds of ineffective assistance of counsel are "substantial." Based on the available record, the outcome of the jury trial for the assault case turned in large part on the credibility of the complaining witness. (The trial transcripts are not in the state court habeas records, but the transcript for the sentencing is, which provides ample insight into Petitioner's case.) At sentencing, Petitioner told the court that the victim was lying at trial, and the court explained to Petitioner that the jury found him guilty. (Dkt. Entry No. 7-13 at 74.) According to the sentencing transcript, Petitioner was quoted in the PSI as saying that he merely

17

fell on the victim, and she started screaming.  (*Id.*)   The undersigned observes that the victim was the same in his both of his assault cases, and Petitioner had a history of prior family/domestic violence.  (*Id.* at 73–74)   The record reflects that Petitioner pleaded guilty to the assault charge in the parallel criminal case.  (*Id.* at 37; 64; 74.)   The record shows that the prosecutor argued for the maximum sentence of 10 years, although the prosecution opted not to pursue the enhancement for the priors;   after hearing the sentencing arguments, the judge imposed a sentence of 9 years (for each count, to run concurrently).  (*Id.* at 73; 75–76.)   Former counsel avers that he negotiated an outcome with the prosecutor and advised Petitioner on numerous occasions, including on the eve of trial, to accept the recommendations, but Petitioner always insisted on going to trial.  (*Id.* at 68.)

Petitioner's allegations of deficient performance are conclusory and generic and lack record support, and, as a result, the asserted deficiencies do not support the conclusion that Petitioner's grounds are "substantial" within the meaning of *Martinez*.  *See Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (reiterating that, under *Strickland*, "[c]ounsel's competence . . . is presumed, and the [petitioner] must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy") (citations omitted); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (explaining that, while "pro se habeas petitions must be construed liberally, mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue");   *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be of probative

evidentiary value."). Petitioner does not provide in his federal habeas briefing any details about the alleged familial relationship between counsel and the judge, although he mentions in an affidavit he attached to his state application that the state judge might be counsel's uncle. (*See* Dkt. Entry No. 7-11 at 5.) Petitioner does not explain how the simple fact of this familial relationship between defense counsel and the state judge amounted to a conflict of interest for counsel, but, more importantly, how that relationship or alleged conflict prejudiced Petitioner. *See Beets v. Scott*, 65 F.3d 1258, 1265 (5th Cir. 1995) ("*Strickland* offers a superior framework for addressing attorney conflicts outside the multiple or serial client context."). He does not explain with any meaningful specificity how counsel failed—in an apparently "he said-she said" assault case—to prepare and investigate, nor does he explain what defense was not mounted, but should have been. *See Strickland,* 466 U.S. 668, 691 (1984) (noting that "when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether" and explaining that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."); *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."). Lastly, Petitioner does not explain why counsel's alleged impression that the state trial judge might be lenient at sentencing amounted to ineffective assistance, except to suggest that counsel's relationship to the judge caused counsel to be complacent or less than zealous.[2]   (*See* Dkt. Entry No. 1 at 13.)

---

[2]   In the affidavit Petitioner attached to his state application, he states that he felt more

Moreover, Petitioner fails to allege prejudice in his federal petition—*i.e.*, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   Under *Strickland*, 466 U.S. at 693, the defendant must affirmatively demonstrate prejudice.   Based on the record, Petitioner faces a formidable uphill battle trying to demonstrate prejudice under Claim 3.   This is particularly true when it is apparent that the jury found the victim to be a credible witness, *see Hinton v. Alabama*, 134 S. Ct. 1081, 1089 (2014) ("When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.") (citing *Strickland*, 466 U.S. at 695), and considering that he challenges counsel's strategic and tactical choices at trial, counsel's presumably professional, reasoned judgment about any conflicts, and counsel's opinion about how Petitioner could minimize his sentencing exposure, *see Strickland*, 466 U.S. at 693 ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test."). Dubious and speculative claims of prejudice do not suffice to show that Petitioner's grounds are "substantial." *See, e.g., Koch*, 907 F.2d at 530 (explaining that, while "pro se habeas petitions must be construed liberally, mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue"); *Ross*, 694 F.2d at 1011 ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro

---

inclined to follow counsel's advice to plead guilty to the second charge because counsel told Petitioner the judge might be more lenient at sentencing if he pleaded guilty to the second charge. (*See* Dkt. Entry No. 7-11 at 5.)   Familial relationship or not, counsel's advice about his options for possibly minimizing his sentencing exposure following the trial—in light of the parallel proceedings— does not sound  deficient or prejudicial, particularly considering the unfavorable outcome of the jury trial.

se petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").

In summary, Petitioner's third claim and the grounds asserted are procedurally defaulted, and Petitioner is unable to overcome the default. This third claim should be denied and dismissed.

## V.   CONCLUSION

### *Recommended Disposition*

After careful review of the record and applicable law, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment (Dkt. Entry No. 8) be **GRANTED** to the extent it is consistent with this Report, Petitioner's claims under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED** with prejudice, and the case be closed.

The undersigned also respectfully recommends that the District Court deny a Certificate of Appealability upon issuance of its final order in this section 2254 proceeding. The undersigned finds that the record supports the conclusion that Petitioner fails to show: (1) that reasonable jurists would find this Court's "assessment of the constitutional claims debatable or wrong" or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing 28 U.S.C. § 2253(c)).

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations. A party may respond to another party's objections within 14 days after being served with a copy thereof. The district judge to whom this case is assigned shall make a *de novo* determination upon the record, or after

additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made.   The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The clerk of this Court shall forward a copy of this document to the parties by any receipted means.

**DONE** at McAllen, Texas, this 10th day of March, 2016.

Dorina Ramos
UNITED STATES MAGISTRATE JUDGE